RANDY S. GROSSMAN
United States Attorney
ALLISON B. MURRAY
California Bar No. 328814
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9711
Email: Allison.Murray@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-CR-2293-JLS |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| VALDEMAR VALLECILLA PRADO (3) | Date: November 2, 2022<br>Time: 9:00 a.m. |
| Defendant. | Honorable Janis L. Sammartino |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Allison B. Murray, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to Defendant 3 Valdemar Vallecilla Prado. This memorandum is based upon the files and records of the case.

## I.  INTRODUCTION

Ronald Vinicio ALVARADO PISCO ("ALVARADO PISCO"), Luis Fernando VALENCIA ("VALENCIA"), and Valdemar VALLECILLA PRADO ("VALLECILLA"), (defendants), are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503 and 18 U.S.C. § 2, and Operation of a Semi-Submersible Vessel without Nationality in violation of 18 U.S.C. §§ 2285 and 2.

A substantial sentence is warranted here. From the sea and air, semi-submersibles are difficult to spot. With most of their hull and bulk submerged below the waterline, it is often a miracle that they are spotted at all. The Defendant's vessel was no different. Long and slender, 60 feet in length, with a green fiberglass hull matching the coloring of the Pacific Ocean, *but for* the vessel's three 75 horsepower engines cutting a wake through the ocean at 13 knots, and the keen eye of maritime patrol air crew, this crime may have been successful. Over time, semi-submersible vessels, due to their likelihood of avoiding detection, have become the perfect choice for narco-traffickers. Not only are they more likely to succeed, but they are also capable of carrying increasingly larger volumes of drugs on board. The forward section of the semi-submersible is a holding tank. It is for this and other national security reasons that Congress banned the mere operation of these vessels.

An appropriate sentence in this case should not only reflect the quantity of drugs seized, but also distinguish use of semi-submersibles in narco-trafficking from other vessel types, including open-hulled pangas and fishing lanchas. Maritime cocaine smuggling is complicated. It is complicated further when it occurs aboard a semi-submersible vessel. The skill and experience necessary to transport nearly 1,500 kg of cocaine on the high seas, on a low profile or semi-submersible vessel, is significant. Had the Defendant not been stopped by the Coast Guard, his voyage would have taken weeks, and required navigating hundreds of nautical miles on the open ocean. As a career fishermen, he was specifically chosen due to his familiarity with the maritime environment and surety in carrying out the job. He possessed an extraordinary skill unseen in everyday persons. In return for his talents and experience, he was promised a significant reward.

An appropriate sentence here should also reflect that this was not the Defendant's first maritime smuggling offense. In 2004, Defendant VALLECILLA was convicted in the Middle District of Florida for a substantially similar crime—Possession with Intent to Distribute Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR ¶ 35. In that case, Defendant and three others conspired to transport over 1,000 kg of cocaine from Colombia across the Eastern Pacific Ocean using a go-fast style vessel. He

was sentenced to 135-months in custody. *Id.* Having previously been convicted of maritime drug smuggling, Defendant acutely knew the consequences of repeating the act. He chose to do so anyway. This time aboard a semi-submersible.

General and specific deterrence is necessary here. Smuggling events occurring on board semi-submersibles warrant significant punishment. Likewise, the Defendant must be deterred from reoffending. After taking into consideration the seriousness of the offense and the remaining 3553(a) factors, the United States recommends a sentence of 150 months custody, concurrent, followed by 5 years of supervised release, no fine, and a $200 special assessment.

## II.     STATEMENT OF FACTS

### A.     The Crime

On July 26, 2021, a Maritime Patrol Aircraft (MPA) detected a semi-submersible vessel with three outboard engines traveling at 13 knots approximately 27 nautical miles southwest of Isla De Malpelo, Colombia, in international waters.[1] MPA captured video and images of the semi-submersible vessel underway.

 

---

[1] 18 U.S.C. § 2285(h) states "semi-submersible vessel" has the meaning given in 46 U.S.C. § 70502. 46 U.S.C. § 70502(f) explains "[t]he term 'semi-submersible vessel' means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft." As demonstrated by the pictures above and below, this vessel meets the definition of a semi-submersible.

United States Coast Guard Cutter ("USCGC") JAMES was nearby, reacquired the semi-submersible vessel using an unmanned aircraft system, and diverted to intercept. USCGC JAMES also launched two small boats with an embarked boarding team. As the Coast Guard small boat approached the semi-submersible vessel, officers activated the siren and blue law enforcement light and made audible callouts on the radio and loud-speaker for the defendants to stop their vessel. They did not. Officers observed three individuals on deck and fired warning shots off the bow. This was successful; the defendants subsequently stopped their vessel and an additional individual emerged.

The semi-submersible vessel was not flying a physical flag, had no registration number or other markings on the hull, and no registration documents. The vessel possessed no indicia of nationality. Though Defendant ALVARADO PISCO claimed to be the master of the vessel, he made no claim of nationality for the vessel. Based on this, the Coast Guard treated the vessel as without nationality or stateless and conducted a full law enforcement boarding.



During the boarding, Boarding Officers located multi-colored burlap sacks consistent with illicit narcotics. Overall, 1,192 bricks of cocaine weighing approximately 1,435 kilograms were recovered from the semi-submersible vessel along with two Garmin GPS devices; one satellite phone; three VHF radios; one sim card; one portable charger;

laminated notes containing grid coordinates along with cipher codes; and two antennae. Officers also located three backpacks containing wallets and medicine.






### B. Defendant's Statements

During the presentence interviews, VALLECILLA indicated that he would receive financial payment for accepting the job. PSR ¶ 15.

## III. THE GUIDELINES

### A. Calculation

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements or any reductions for role. There is a two-level upward adjustment for operation of a semi-submersible under USSG § 2D1.1 (b)(3), a two-level downward adjustment for Safety Valve, and a three-level downward adjustment for acceptance of responsibility. VALLECILLA has met the requirements for Safety Valve under USSG § 2D1.1.(b)(18) and 5C1.2. He is in Criminal History Category II per the PSR. The resulting guideline range is 188 to 235 months in custody. Pursuant to the plea agreement, the United States is recommending a sentence of 150 months in custody.

### B. Government Recommendation

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel and Operation of a Semi-Submersible vessel. He acknowledged that he committed the offenses knowingly and with the intent to evade detection. The evidence shows Defendant coordinated an at-sea voyage spanning hundreds of nautical miles to transport a vast sum of cocaine valued at over 24 million U.S. dollars. Having already served a significant sentence in the United States for maritime drug smuggling, Defendant knew firsthand the ramifications of transporting cocaine on the high seas, what it entailed, and yet decided to do so again. The promise of a financial reward motivated him. The specific threat of renewed time in custody did not deter.

The sophistication and complexity of carrying out the offense similarly influences the Government's recommendation. Defendant acted as more than a mere drug courier. Unlike a courier tasked with driving a vehicle across the border, maritime drug smuggling is a complex undertaking – a venture for which Defendants' preparation, expertise,

experience, and efforts were critical. Doing so using a semi-submersible vessel takes even greater skill than a normal panga-style vessel or fishing lancha. Defendant – in effect – helped pilot a submarine. Due to the semi-submersible's exceptional design and shape, with most of its hull under the surface of the water, navigating such a stealth-like vessel requires extraordinary reliance on navigational tools such as GPS, and confidence in maneuvering a vessel uniquely affected by both surface and underwater maritime conditions. Defendant was specifically chosen because of his familiarity with the maritime environment and his unique capability. With three outboard engines, he no doubt possessed considerable shiphandling skill and an understanding of engineering, refueling, and repairs. Furthermore, the combination of low freeboard, inability to ascertain radar contacts, and drastically reduced visibility showcase the exceptional talents of Defendant at the helm. Navigating a semi-submersible vessel also presents extraordinary innate risk in comparison to higher freeboard vessel types, such as open hulled pangas. Any change in sea conditions or weight can quickly cause the vessel to sink. Defendant was skilled and trusted. A prudent drug smuggler would not entrust 1,500 kgs of precious cargo to the unskilled mariner. In sum, the sophistication of the act and the comparable experience of Defendant weighs in favor of a significant sentence.

That Defendant used a semi-submersible vessel to carry illicit narcotics makes his involvement and motivation even more notable. It should be reflected in an appropriate sentence. Semi-submersible vessels, by their very nature, are designed for covert operations. Their design and coloring make them difficult to detect visually and by radar. They often go undetected. For this reason, they rate a greater guarantee of success and reduced risk to those choosing to pilot them. As a result, semi-submersibles pose a particular threat to the national security of the United States. They are not used for fishing, pleasure, ferrying passengers, or any other legitimate purpose. Indeed, under 18 United States Code § 2285, Congress explicitly made the mere *operation* of a semi-submersible vessel illegal, declaring "that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious

international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States." Drug Trafficking Vessel Interdiction Act of 2008, S. 3598, 110th Congress, § 101 (2008). Therefore, the operation of this vessel, even if it had not been carrying nearly 1,500 kilograms of cocaine, is illegal and must be accounted for in the sentence.

The United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 964-66 (9th Cir. 2022) (noting that the relevant comparators are the *actual* participants in the defendant's crime—not that of every hypothetical member of a typical drug trafficking organization). He has not made such showing. Successful operation of a semi-submersible requires teamwork, with each member using their respective skill, training, and acumen to keep the vessel on course. VALLECILLA was not less culpable than the average participant—let alone *substantially* less culpable. Like his co-defendants, he understood the scope of the crime; he was involved in planning for and preparing for the criminal activity (as evidenced by recovered backpacks with medicine, wallets, and supplies); and as one of four men on the vessel in the middle of the high seas, he was in control of the vessel. He participated extensively in the criminal activity, stood to benefit from it, and exercised discretion in performing the acts to further the criminal enterprise. This weighs against a role reduction.

The sheer quantity of cocaine found on board the defendants' semi-submersible vessel also influences the Government's recommendation. The defendants were responsible for trafficking an astounding amount of cocaine. It was over 240 times the amount of cocaine required for a ten-year mandatory minimum and more than twice the amount of cocaine that establishes the highest possible base offense level in the sentencing guidelines. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States

it would have been worth over $24 million dollars. There is no doubt that if this highly dangerous drug successfully made it to the United States, it could have led to extensive harm.

Finally, given the need to generally deter others from use of semi-submersibles in illicit trafficking and specifically deter this Defendant, it is essential that the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Despite Defendant VALLECILLA previously receiving a substantial sentence of 135-months in custody for maritime smuggling, it was not enough to prevent him from reoffending. A graduated sentence is necessary here. The Government's recommendation of 150 months reflects the need for a graduated sentence and appropriately accounts for any variances based on the history of characteristics of the Defendant, including his age, health, and family history.

## C.   Conclusion

After considering the 3553(a) factors, the United States believes the recommended sentence of 150 months in custody, followed by 5 years' supervised release, no fine, and a $200 special assessment is sufficient but not greater than necessary.

DATED: October 26, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Allison B. Murray*
Allison B. Murray
Special Assistant U.S. Attorney